IN RE VICKERS CHILDREN.

(Nos. CA83-06-071 and -072—Decided December 30, 1983.)

*Mr. Michael J. Sage,* assistant prosecuting attorney, for appellee.

*Messrs. Baden, Jones, Scheper & Crehan* and *Mr. Mark N. Hardig,* for appellant Marion Pate.

*Mr. Gary L. Sheets,* for appellant Diane Vickers Pate.

*Per Curiam.* This cause came on to be heard upon appeals from the Domestic Relations Division of the Court of Common Pleas of Butler County.

This case was initiated by the filing of a complaint in the Domestic Relations Division of the Butler County Court of Common Pleas alleging that Madio and Joseppi Vickers were neglected children as defined by R.C. 2151.03 and requesting that permanent custody be granted to the Butler County Department of Public Welfare (the "welfare department"). The next item in the record is an entry granting temporary custody of Madio and Joseppi to the welfare department.

A summons was issued to the then Miss Diane Vickers, now Mrs. Diane Vickers Pate (referred to as either

"Miss Vickers" or "Mrs. Pate" herein), as the mother of the children. The father was alleged at that time by Miss Vickers to be one "Leroy Tucker."

After a hearing, the trial court found the Vickers children to be neglected, awarded temporary custody to the welfare department and ordered the welfare department to file a reunification plan. Such a plan, pursuant to R.C. 2151.412(C), was filed and incorporated by reference by the court on August 12, 1982. Marion Pate, though not a party to the original hearing, was given a role in the reunification plan adopted by the court for reasons more fully discussed below.

On March 31, 1983, the welfare department filed a motion for permanent custody of the Vickers children alleging that Mr. and Mrs. Pate (Miss Vickers and Marion Pate had married by that time) and the alleged "Mr. Tucker" had not fulfilled their obligations under the reunification plan. After a hearing on the matter, the court announced its intention to award permanent custody to the welfare department. Subsequent to a request to do so under R.C. 2151.414(B), the trial court filed a judgment entry in which it made findings of fact and conclusions of law.

This court's jurisdiction was invoked by the independent initiation of appeals by both Mrs. Pate and Mr. Pate (case Nos. CA83-06-071 and CA83-06-072, respectively). In an August 10, 1983, entry, this court consolidated both cases for the purposes of appeal.

## I
### Case No. CA83-06-071

Mrs. Pate's attorney filed an "Anders" brief (see *Anders* v. *California* [1967], 386 U.S. 738), alleging that "while errors did occur, the judgment on the whole is supported by the facts adduced, and any errors that did occur were harmless * * * so far as appellant Diane Vickers is concerned." Counsel then submitted "all arguable errors he * * * located within the record" so that this court might review them to determine whether they contain arguable merit. Counsel apparently believes that, after examining the record and pertinent case law, while some "arguably improper" considerations and procedural errors surfaced, the trial court was correct in its conclusion that Mrs. Pate should be divested of her "residual parental rights, privileges, and responsibilities."[1]

Mrs. Pate first notes that the initial removal of the children from her home was accomplished without a hearing to determine the immediate necessity of removal, either before the actual removal occurred, or within a reasonable time thereafter.

Mrs. Pate argues that a "person's children probably enjoy less due process protection from *ex parte* government action than that same person's furniture." However, where constitutional arguments are not raised, argued and ruled upon by the trial court, reviewing courts should not entertain such arguments for the first time on appeal. *State, ex rel. Specht,* v. *Oregon City Bd. of Edn.*

---

[1] R.C. 2151.011(B)(11) provides that:

" 'Residual parental rights, privileges, and responsibilities' means those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the person, including but not necessarily limited to the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support."

In this case, Mrs. Pate previously lost custody of her children, as described above, so that she retained only "residual parental rights, privileges, and responsibilities" at the time of the trial on the motion for permanent custody.

(1981), 66 Ohio St. 2d 178, 182 [20 O.O.3d 191].

Mrs. Pate next notes that the court below failed to bifurcate the hearing proceedings into separate adjudicatory and dispositional stages and permitted testimony as to the best interests of the children to enter into what was ostensibly the adjudicatory portion of the hearing.

The statutory scheme adopted in 1980 for permanent custody cases provides that a county department, the welfare department herein, may file a motion requesting permanent custody where the department has obtained temporary custody and a period of at least six months has elapsed since the order of temporary custody was issued. R.C. 2151.413. R.C. 2151.414(A) provides that upon the filing of such a motion a summons shall be served, pursuant to R.C. 2151.29, with a notice explaining the potential result of the proceeding, and that the court shall conduct:

"(A) * * * a hearing to determine all of the following:

"(1) If the county department * * * has made a good faith effort to implement the initial and comprehensive reunification plans for the child that were approved by the court pursuant to section 2151.412 of the Revised Code;

"(2) If the parents have acted in such a manner that the child is a child without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care. In making this determination, the court shall consider all relevant factors, including but not limited to, the following considerations:

"(a) The extent to which the parents of the child have conformed to the initial and comprehensive plans for the child that were approved by the court pursuant to section 2151.412 of the Revised Code and the extent to which the parents have fulfilled their obligations under the plans;

"(b) Any existing emotional or mental disorders of the parents and the anticipated duration of the disorders;

"(c) Any physical, emotional, or sexual abuse of the child by the parents that occurs between the date that the original complaint alleging abuse was filed and the date of the filing of the motion for permanent custody;

"(d) Any existing excessive use of intoxicating liquor or drugs of abuse by the parents;

"(e) Any physical, emotional, or mental neglect of the child by the parents that occurs between the date that the original complaint alleging neglect was filed and the date of the filing of the motion for permanent custody.

"(3) If it is in the best interest of the child to permanently terminate parental rights."

R.C. 2151.414(B) then provides, relative to the facts herein, that the movant is to be awarded permanent custody of the child if it is proved, by clear and convincing evidence:

"* * * that the child is not abandoned or orphaned and the parents have acted in such a manner that the child is a child without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care, * * *."

Contrary to Juv. R. 29 and 34, R.C. 2151.414 appears to provide for a single hearing in cases involving a motion for permanent custody filed by a "county department, board, or certified organization." See R.C. 2151.413(A) and R.C. 2151.414(A). Yet, Juv. R. 1(A) provides that:

"These rules prescribe the procedure to be followed in all juvenile courts of this state *in all proceedings coming within the jurisdiction of such courts,* * * *." (Emphasis added.)

It is clear that the Juvenile Rules, which were prepared and submitted by the Ohio Supreme Court to the legislature pursuant to Section 5(B), Article IV of the Ohio Constitution,[2] must control over subsequently enacted inconsistent statutes purporting to govern procedural matters. Any other interpretation would gut Section 5(B), Article IV, of its essential purpose, that of constitutionally granting rule-making power to the Supreme Court. See, also, *Jacobs v. Shelly & Sands, Inc.* (1976), 51 Ohio App. 2d 44 [5 O.O.3d 165] (same result where Civil Rules and Rules of the Court of Claims were interpreted).

Accordingly, hearings for permanent custody under R.C. 2151.414 must conform to the Juvenile Rules. Substantively, the issues at such a hearing, where the child is not abandoned or orphaned, are clearly defined by the statute to be:

(1) Whether the parents have acted in such a manner that the child is a child without adequate parental care, and

(2) Whether the parents will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care. See R.C. 2151.414(B).

A child is a child without "adequate parental care" if he is without:

"* * * the provision of adequate food, clothing, and shelter to ensure a child's health and physical safety and the provision of specialized services warranted by a child's physical or mental needs." R.C. 2151.011(B)(17).

Other relevant factors in determining this issue can be found in R.C. 2151.414(A)(2)(a) thru (e), quoted above.

The best interests of the child should not enter into the adjudication of whether the child is receiving adequate parental care. The focus is on the *parents, i.e.,* what they are providing in terms of food, shelter, and care, and what they are capable of providing in the future. This court has previously discussed the dangers of permitting the best interests of the child to enter into the adjudicatory process and will not reiterate that discussion now. See, *e.g., In re Sims* (1983), 13 Ohio App. 3d 37.

In the case at bar, the trial court asked for, and heard, a report of the guardian *ad litem* and expressed its concern over the amount of time the children had spent in foster homes and the dangers of attempting a reunification after such time. It is clear that evidence of the best interests of the children was entertained, and that it played an important role in the court's decision below.

However, such evidence was not objected to by counsel for Mrs. Pate. Thus, we cannot reverse on such grounds unless the error rises to the magnitude of "plain error." In the case of Mrs. Pate, the evidence against her was overwhelming. In the fifteen months since losing custody of the children temporarily to the welfare department, she had been arrested fifteen times; and, at the time of the hearing below, she had close to two hundred seventy days remaining

---

[2] Section 5(B), Article IV of the Ohio Constitution provides in pertinent part:

"The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

on various jail sentences. She had simply failed to provide adequate parental care for the two children when she had them and did little or nothing to improve her situation in the interim fifteen months.

Despite the actions taken by the court below, we must find, in light of the weight of the substantial evidence condemning Mrs. Pate as a parent, that, as to her, the court's order permanently divesting her of all parental rights, privileges and responsibilities cannot be reversed.

## II
### Case No. CA83-06-072
### A

Mr. Pate argues that the trial court's order divesting him of all parental rights, privileges and responsibilities was against the manifest weight of the evidence. We must agree.

Mr. Pate and Mrs. Pate had, prior to their alleged December 1982 marriage, developed an on-going relationship for many years. Mr. Pate was living with the then Miss Vickers at the home of another when he took Miss Vickers' children to the welfare department alleging that she was often gone from the home for long periods and that it was impossible for him to care for the children as he worked all day. Shortly after leaving the children with the welfare department, Mr. Pate had a change of heart and returned for them. However, the welfare department subsequently filed a complaint and obtained an order granting it temporary custody of the children.

At the initial hearing, Miss Vickers alleged that a "Leroy Tucker" was the father of the children. Mr. Pate apparently appeared and testified at that hearing (this court was not provided with a transcript of that proceeding), but, did not assert that he was the father or that he had any other interest in the proceedings other than as a close friend of Miss Vickers.

Subsequently, Mr. Pate was made a party to the various reunification plans, created by the social worker assigned to this case, after he and Miss Vickers acknowledged that he was the natural father of the children; but, he was not permitted to have even temporary custody of the children until he "legitimized" the children. Mr. Pate was supposed to, and did, attend various parenting courses suggested by the agency during 1982.

Mr. Pate apparently married Miss Vickers in December of 1982. Though the court states in its judgment entry that Mr. Pate's legitimization of the children was complete on March 10, 1983, the date listed on a certified copy of the birth certificate bearing Mr. Pate's name as the father of the two children in controversy herein, this would appear to be incorrect.

In *In re Byrd* (1981), 66 Ohio St. 2d 334, 336-337 [20 O.O.3d 309], the Supreme Court noted that:

"* * * [T]here are three methods in Ohio by which a father can legitimate his child: (1) in an acknowledgment proceeding brought under R.C. 2105.18; (2) by adopting the child; or (3) by marrying the mother. * * *" (Footnotes omitted.) See, also, R.C. 3111.03.

Both Mr. and Mrs. Pate testified that they were married in December of 1982. As one of the court's major concerns below was that Mr. Pate waited until after the motion for permanent custody was filed to legitimate the children, it is pertinent, in determining whether the court's judgment is against the weight of the evidence, to note that that concern was misplaced.

We also hold that the state failed to prove that Mr. Pate was not providing adequate parental care to the children or that he would be unable to provide adequate parental care for the children in the near future. It was shown that Mr. Pate was currently living with his parents in housing which appeared

"adequate" to Kiene Landry, a social worker at the welfare department. There was no evidence presented that he failed to care for, or mistreated in any way, the two children when they were in his possession, except that on occasion, the children returned to the welfare department with "dirty faces" or "dirty diapers." Indeed, even the state stated in its brief that: "Though none of these factors singly show a lack of parental care, they do in the aggregate show a lack of the requisite motive and responsibility necessary to provide proper parental care." The state also noted that Mr. Pate failed to attend some counseling meetings and exhibited low motivation at others.

Finally, the trial court stated in its entry that "* * * these children are of very tender age and have spent most of their lives in three foster homes and need the benefit of permanency in their lives; and that it would be totally unfair to these two children to start again any reunification as regards the legal father."

As we noted earlier, the question of what dispositional action is in the best interests of the children is simply not an issue at the *adjudicatory* stage of a hearing. Children are to be removed from their parents where conduct (or lack thereof) adversely affects the child. The focus is on the parent, the parent's conduct and how that conduct has hurt the children. Whether it is "fair to the children" to leave them with a parent becomes an issue only after the adjudication is complete and the dispositional alternatives are being considered.

As there was a failure by the state to show, by clear and convincing evidence, that Mr. Pate was not providing adequate parental care or that he would not in the future be able to provide adequate parental care, we hold that the judgment below was against the weight of the evidence with regard to Mr. Pate.

Accordingly, Mr. Pate's first assignment of error is well-taken.

B

Mr. Pate next argues that hearsay evidence was admitted against him which warrants reversal of the judgment against him.

This court has previously held that hearsay is not admissible in adversarial juvenile court proceedings at which a parent, charged with neglecting his or her children, may lose the right to custody of his or her children. See *In re Sims, supra.* In *Sims,* we held that, as the judge acts as the factfinder and is presumed to be able to disregard hearsay statements, the person against whom the hearsay statements were admitted in such a case must show that the statements were prejudicial or were relied upon by the judge in making his decision.

During the hearing below, a social worker alleged that she was told by Mrs. Pate that Mrs. Pate "suspected" Mr. Pate of allegedly having sexual relations with minors and that Mr. Pate at one time "ripped off" some money from Mrs. Pate. Though clearly hearsay with no alternate grounds for admissibility and highly inflammatory, we note that the court below did not rely upon this testimony in any way in its entry. While the trial court should make every effort to prevent the admission of objected-to hearsay testimony which has no alternate basis for admission, we can find no prejudicial error in the admission of the testimony in question.

Accordingly, Mr. Pate's second assignment of error is without merit and is hereby overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed in part and affirmed in part as discussed above.

It is further ordered that a mandate be sent to the Domestic Relations Division of the Court of Common Pleas of Butler County for execution upon this judgment.

Costs to be taxed in compliance with App. R. 24.

And the court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty.

*Judgment affirmed*
*in case No. CA83-06-071.*
*Judgment reversed*
*in case No. CA83-06-072.*

KOEHLER and JONES, JJ., concur.

HENDRICKSON, P.J., concurring. Although I must concur with the majority that the evidence in case No. CA83-06-071 is so overwhelming that the decision to divest Diane Vickers Pate of all parental rights, privileges and responsibilities must be affirmed, I cannot condone the failure of the trial court to follow the Rules of Juvenile Procedure. Juv. R. 29 requires an adjudicatory hearing, and Juv. R. 34 requires a separate dispositional hearing. Therefore, the failure to conduct two separate hearings is clearly error. It follows that although we were unable to find any prejudice to Mrs. Pate in the case *sub judice,* the failure to conduct a bifurcated hearing is always suspect. After all, we cannot always determine from the record before us that a short-cut in procedure was harmless error.

In case No. CA83-06-072, I concur with the majority in the disposition of both assignments of error.