[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal from a judgment of the Auglaize County Court of Common Pleas, Juvenile Division, which terminated parental rights and granted permanent custody of Edie Jones to the Auglaize County Department of Human Services. For the following reasons, we affirm the trial court's judgment.
In June 1996, Brandy Bailey, Appellant's daughter from his first marriage and Edie's half-sister, brought Edie (then age 11) and a third sister, Julie Jones (then age 13), from Florida to visit with their natural father, Appellant. Prior to this date, Appellant had little contact with Edie. Shortly after Edie and Julie arrived in Ohio they expressed a desire to live with Appellant on a full-time basis. The mother and grandmother of the girls approved of this arrangement. Appellant subsequently enrolled the girls in school and in August 1996 he rented a larger apartment to better accommodate himself and the two children.
At that time Appellant had legal troubles and was sentenced to a prison term; however, the court placed Appellant on furlough. As a condition of the furlough, Appellant was to cooperate with the Department of Human Services. In September 1996, the Department of Human Services conducted an investigation on the welfare of Edie and Julie who were in the sole care of Appellant.
The initial intervention by the Department of Human Services took place between September 11, 1996 through November 15, 1996. As a result of this intervention, the Department of Human Services became aware of the lack of supervision over the children, the children's problems attending school and coping with school when they did attend, and a possible lice infection. On November 15, 1996, Appellant allowed Julie to return to Florida despite the recommendation of the Department of Human Services. Appellant apparently did this knowing that the Department of Human Services had information that Sandra Stokes, the mother of Edie and Julie, had drug, alcohol, and prostitution problems. Because this action violated his furlough, on November 15, 1996, the Auglaize County Common Pleas Court terminated Appellant's furlough. Appellant was ordered to serve a one-year prison term.
Also, on November 15, 1996, the Department of Human Services filed an initial complaint alleging Edie to now be dependent. This was due to a questioned lack of appropriate exercise of parental judgment by Appellant as well as his apparent unwillingness to comply with the recommendations of the Department of Human Services concerning the care and well-being of Julie thereby putting Edie at risk of being subjected to future inappropriate parental judgment by Appellant. Edie was then placed into the care of the Department of Human Services.
Thereafter, on November 21, 1996, during a pro-se Temporary Shelter Care hearing, the trial court awarded temporary custody of Edie to the Department of Human Services. The court found a lack of appropriate family connections in Ohio and the court allowed for the placement of Edie in foster care during the pendency of the dependency proceedings. Subsequent to this hearing, Appellant was appointed legal representation through the Auglaize Public Defender's Office and a guardian ad litem was appointed on behalf of Edie.
On December 16, 1996, an adjudicatory hearing was conducted. At the hearing, Appellant entered an admission to dependency of Edie noting his desire not to contest Edie to be dependent at that time. Temporary custody of Edie was awarded to the Department of Human Services.
Due to a need to prepare a case plan and investigate alternative placement possibilities with family members, the dispositional hearing was continued until February 3, 1997. At that time, due to his criminal problems, Appellant was serving out the balance of his jail sentence. At the dispositional hearing, Appellant requested placement of Edie with his ex-wife, Debra Brown, who resided in St. Mary's, Ohio, pending reunification with her natural family and as an alternative to foster care. Appellant also requested that the trial court put off implementation of any case plan involving Appellant pending his release from jail as Appellant would not be available to comply with and work toward completion of the case plan reunification goals. The trial court expressed a desire to order the case plan knowing that it would not be able to be implemented until Appellant's release from incarceration. Ultimately, Appellant did sign the case plan. The court ordered that the temporary custody of Edie be continued with the Department of Human Services with placement as they deemed appropriate and with further input from the guardian ad litem.
It was after a seven month reunification plan took place that Edie and Appellant were to have their first joint counseling session in May 1997. On the eve before the counseling session, Edie disclosed being sexually molested by Appellant.
On May 2, 1997, the day scheduled for the first counseling session, St. Mary's Police Department attempted to interview Appellant. Appellant was somewhat belligerent and smelled like alcohol. On May 5, 1997, the Department of Human Services had an in-office appointment scheduled with Appellant. Appellant arrived for the appointment, but he then left without the meeting taking place. On May 6, 1997, Pat Knippen of the Department of Human Services received a phone call from Appellant from Iowa; Appellant was apparently in Iowa on employment matters. On May 28, 1997, based on an arrest warrant, Appellant turned himself in.
On June 13, 1997 he received a second furlough from the trial court so that he could again try to get medical attention to the staph infection in his leg. On June 20, 1997, Appellant contacted the Department of Human Services and stated that he could not make his visit for the day and that he wanted to reschedule. Appellant also stated that he wanted Edie to return to Florida. Later, that same day, Appellant called the Department of Human Services again indicating that he did not want Edie back in his custody, did not give a "shit for the case plan" and did not want the child back.
On September 9, 1997, Appellant tested positive for marijuana and cocaine, a probation violation. On September 25, 1997, Appellant's bond was revoked. A jury trial commenced on November 24, 1997 and Appellant was ultimately found guilty of molesting Edie. Appellant received two five year sentences to run concurrently. On appeal, his conviction and sentences were upheld.[1]
Subsequently on January 27, 1998, the Department of Human Services filed a Motion for Permanent Custody of Edie Jones alleging the child could not be placed with either parent within a reasonable period of time, further alleging that Edie should not be placed with either parent due to faults and shortcomings of both. Specifically, the Department of Human Services alleged that both parents had failed continuously and repeatedly, for a period of six months or more, to substantially remedy the conditions which initially caused Edie to be placed outside the home despite an alleged reasonable and diligent effort by the Department to assist both parents in remedying these problems.
Further the Department stated that neither parent effectively, if at all, ever utilized the services and resources offered to them. The Department demonstrated a total lack of support, visitation, or even communication by the mother with Edie at times when the mother was otherwise able to do so. The Department also pointed to Appellant's conviction of gross sexual imposition against Edie, noting due to his pending prison incarceration he remained unavailable for the foreseeable future, up to and including a total of five years.
During the evidentiary phase of the Permanent Custody Hearing, an issue arose over the attempt of the Department of Human Services to introduce as evidence the transcript of sworn testimony given by Edie during the time of Appellant's criminal trial on the charges of gross sexual imposition. The trial court ultimately allowed the transcribed testimony.
At the conclusion of the hearing, the trial court found that by clear and convincing evidence it was in the best interest of Edie that her permanent custody be awarded to the Department of Human Services. In doing so, the court found that Edie could not be placed with either parent within a reasonable time and/or should not be placed with either parent, noting that the child's mother never made an appearance in the court proceedings and the father is currently unavailable due to his prison incarceration as well as due to the nature of his conviction for sexual misconduct.
It is from this decision that Appellant presents two assignments of error.
 ASSIGNMENT OF ERROR NO. I The trial court erred to the substantial prejudice of appellant in allowing into evidence during the permanent custody trial, over appellant's objection, the transcribed prior criminal trial testimony of Edie Jones, and in doing so, the trial court failed to comply with Ohio Juvenile Rule 27.
Appellant contends that the trial court erred in allowing the use of Edie's transcribed testimony in lieu of her in court testimony. At the hearing, Appellant objected to the use of Edie's transcribed testimony from Appellant's criminal trial on the grounds of hearsay, due process and confrontation. The trial court allowed the transcribed testimony pursuant to Juv.R. 27(B)(3).
A trial court has broad discretion in the admission or exclusion of evidence, and its judgment will not be reversed absent a clear showing of abuse of discretion resulting in material prejudice. State v. Hymore (1967), 9 Ohio St.2d 122,128, certiorari denied (1968), 390 U.S. 1024. A reviewing court will be slow to overturn an adjudication because inadmissible evidence was admitted unless the trial court actually relied on that evidence in its judgment. In re Sims (1983), 13 Ohio App.3d 37,41 (citation omitted). A trial judge is presumed to be capable of disregarding improper testimony. Id.
First, we find that the transcribed testimony of Edie was properly admitted under Juv.R. 27(B)(3). Juv.R. 27(B)(3)provides in part:
 In a proceeding where a child is alleged to be an abused child, the court may order that the testimony of the child be taken by deposition in the presence of a judge or a magistrate. * * * All or part of the deposition is admissible in evidence where all of the following apply:
(a) It is filed with the clerk;
 (b) Counsel for all parties had an opportunity and similar motive at the time of the taking of the deposition to develop the testimony by direct, cross, or redirect examination;
 (c) The judge or magistrate determines there is reasonable cause to believe that if the child were to testify in person at the hearing, the child would experience emotional trauma as a result of the child's participation at the hearing.
See, also, R.C. 2151.35(G). Although not a deposition, we find that the Edie's transcribed testimony fits under Juv.R. 27(B)(3) as it was testimony given at a criminal trial under oath with a presiding judge. Moreover, Appellant's criminal trial was also held in Auglaize County. Thus, the transcript of the proceeding was already in the hands of the county clerk. In addition, Appellant was given ample opportunity to cross examine Edie at his criminal trial about matters contained in the transcript. We also find that he had a motive to examine her and that he did, in fact, do so. In addition, the trial court did not admit the evidence until it was satisfied that if Edie were to testify in person at the hearing, she would experience emotional trauma as a result of her participation at the hearing.[2]
Second, even if this evidence were deemed to be hearsay, we would not reverse the trial court on this issue. Evid.R. 801(C) defines "hearsay" as "* * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We acknowledge that "[h]earsay is not admissible in adversarial juvenile court proceedings at which a parent, charged with neglecting his or her children, may lose custody of the children."In re Vickers Children (1983), 14 Ohio App.3d 201, paragraph three of the syllabus. However, as the trial court has broad discretion in the admission or exclusion of evidence, and it does not appear that the trial court relied on the transcript in its judgment, we will not reverse the trial court's judgment absent a clear showing of abuse of discretion resulting in material prejudice. State v.Hymore (1967), 9 Ohio St.2d 122, 128, certiorari denied (1968),390 U.S. 1024. In this case, it does not appear that the trial court relied on Edie's testimony as Appellant's conviction, which was admitted into evidence, also stated the nature of the charges and the length of sentence imposed on Appellant. Thus, even if the complained of statements were improperly admitted, Appellant was not prejudiced and any error was harmless.
Third, we find that Appellant's argument that he was denied his constitutional right to confront the witness against him has no merit. The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal proceedings, the accused shall enjoy the right * * * to be confronted with the witnesses against him." (Emphasis added.) It has been held that thisSixth Amendment right is only applicable in criminal proceedings, not civil trials or "non-criminal" adjudications. See, e.g., In reBurchfield (1988), 51 Ohio App.3d 148, 154. Specifically, several courts have held that the Confrontation Clause does not apply in abuse, neglect and dependency proceedings in juvenile court. See,e.g., In re Henderson (Nov. 28, 1997), Lake App. No. 96-L-068, unreported; In re Pieper Children (1991), 74 Ohio App.3d 714,725-726; Burchfield, supra. As this case was a dependency case in juvenile court, Appellant was not entitled to confront the witnesses against him under either the federal or state Confrontation Clauses. See In re Henderson, supra.
Fourth, we agree that Appellant is entitled to protection under the Due Process Clause. A parent has a fundamental right to care for and have custody of his or her child. Santosky v.Kramer (1982), 455 U.S. 745, 753. This right is not lost simply because the parent has lost temporary custody of the child to the state. Id. at 751-755. Parental custody may only be terminated through procedures which satisfy due process requirements. Id. at 754. "Due process requires each party to receive a fair trial in light of the interest being protected." In re Henderson, supra, citing Burchfield, 51 Ohio App.3d at 154.
 Because of such due process concerns, even in a civil context, there must be substantial justification set out by the trial court for a deviation from the usual, physical, face-to-face confrontation. And, correspondingly, the deviation must be as minimal as possible.
 In re Henderson, supra. In this case, Appellant was able to cross examine Edie at his criminal trial. Thus, Appellant had a face-to-face encounter with the witness, Edie, at his criminal trial. As such, Appellant's due process rights were not violated.
Assuming arguendo that the trial court improperly admitted Edie's transcribed testimony, Appellant must demonstrate that not only was it error but that the error was prejudicial. In re S.
(1995), 102 Ohio App.3d 338, 343, citing Smith v. Fletcher (1967),12 Ohio St.2d 107, paragraphs one and two of the syllabus. Edie's testimony concerning the abuse by her father is not prejudicial as Appellant's conviction for two counts of gross sexual imposition against her was admitted into evidence. Moreover, the record included other evidence that Edie had been sexually abused. SeeIn re Conley/Wilt Children (Feb. 6, 1998), Clark App. No. 96-CA-0090, unreported; In the Matter of Skaggs (Sept. 30, 1994), Logan App. No. 8-93-30, unreported. Appellant testified that Edie made accusations of Appellant molesting her. In addition, Appellant admitted being incarcerated pursuant to a conviction for the charges of gross sexual imposition. Patricia Knippen, supervisor for the Children Services Unit of the Auglaize Department of Human Services, testified that Edie disclosed being sexually abused by Appellant and, as a result, Appellant was indicted for the abuse.
Thus, even if we were to eliminate Edie's transcribed testimony, the evidence would still overwhelmingly support the action taken by the trial court. Accordingly, Appellant was not prejudiced by Edie's transcribed testimony received into evidence, irrespective of whether its admission was proper or not. Thus, the trial court did not abuse its discretion in admitting Edie's transcribed testimony. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The judgment of the trial court is against the manifest weight of the evidence.
Under this assignment of error, Appellant contends that evidence at the trial called into question the reasonableness of the case plans as well as the diligence of the Department of Human Services to cooperate and work with the family of Edie and the authorities in Florida to try to find a reasonable avenue by which they could have achieved reunification, at least with a relative.
R.C. 2151.353(A)(4) sets forth the procedure to be followed and the standard to be applied in cases where a children services agency's original complaint requests permanent custody of an abused, neglected or dependent child. In re Pachin (1988),50 Ohio App.3d 44; In the Matter of Skaggs, supra. R.C. 2151.353(A)(4) provides that the court can commit a child adjudged dependent, neglected or abused to the permanent custody of a public children services agency if it makes the determinations required under R.C.2151.414. The agency must offer clear and convincing evidence to establish that one or more of the conditions listed in R.C.2151.414(E) exists as to each of the child's parents.
If, after considering all of the relevant evidence, the court determines, by clear and convincing evidence, that one or more of the conditions listed in R.C. 2151.414(E) exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents. Finally, under R.C.2151.414(D), a juvenile court must consider the best interests of the child by examining factors relevant to that case.
Only if these requisites are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996),75 Ohio St.3d 95. Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, a petitioner must prove each of its allegations by producing "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
"[T]he decision of a trier of fact relating to a motion for permanent custody of children will not be overturned as against the manifest weight of the evidence, so long as the record contains competent credible evidence from which the trial court could have formed a firm belief or conviction that the essential statutory elements have been established." In the Matter ofLawson/Reid Children (Apr. 18, 1997), Clark App. No. 96-CA-0010, unreported.
The trial court specifically found that the conditions set forth in R.C. 2151.414(E)(1)-(8), and (12) existed. In its order, the trial court stated:
 1. There is [a] reasonable probability that the child will be adopted and an adoptive placement would positively benefit the child.
 2. That an order of permanent commitment of Edie Jones to the Auglaize County Department of Human Services is necessary to facilitate an adoption.
 3. That the mother of Edie Jones was not interested enough to appear on her behalf at this hearing and, that even at a time when she was in Ohio, the mother chose not to file for custody of Edie Jones.
 4. That the father of Edie Jones has a repeated history of infrequent contact and support with all of his children of three different mothers including this child.
 5. That the father of Edie Jones is incarcerated because of an offense committed against Edie Jones and will not be available for the care of the child for at least 18 months from the time of the filing of the motion for permanent custody and thus prevents the father from providing care for Edie Jones.
 6. That Edie Jones' parents have failed to remedy, repeatedly and substantially, any of the case plan goals and therefore the child cannot be placed with either parent within a reasonable period of time and/or should not be placed with either parent pursuant to R.C. 2151.414(E)(1)(2)(3)(4)(5)(6)(7)(8)(12).
 7. That no other significant family member has chosen to come forward to intervene and announce themselves as possible placement options for Edie Jones.
 8. An order of permanent custody of Edie Jones to the Auglaize County Department of Human Services is in the child's best interest.
The court further found that the report of the guardian ad litem
contained the opinion that it would be in the best interest of Edie to be placed in the permanent custody of the Auglaize County Department of Human Services.
This judgment will not be overturned as against the manifest weight of the evidence, as the record contains competent, credible evidence by which the trial court, as trier of fact, could have found that the essential elements were met. In the Matter ofLawson/Reid Children, supra, citing C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279. Our examination of the record reveals that such evidence does exist. Additionally, there is ample evidence without Edie's testimony which would support the trial court's determination. See In re Holcomb (1985),18 Ohio St.3d 361.
Specifically, Edie's counselor, Shirley Dawson, testified that Edie would suffer a negative effect if Edie were returned to her parents because she is currently in a stable environment. Ms. Dawson also testified that Edie's grades are improving and her attitude is better. Moreover, Ms. Dawson testified that any change in Edie's current situation would affect her in a detrimental manner.
Patricia Knippen, supervisor for the Children Services Unit of the Auglaize Department of Human Services, testified that neither of the two case plans were completed by Appellant or Edie's natural mother, Sandra Stokes. The first case plan was not completed because Appellant was in and out of jail. Ms. Knippen stated that had it not been for Appellant's violations, he would have been able to participate in the first case plan. Moreover, when Appellant was out of jail he lived with his daughter, Brandy. Also, when Appellant was out of jail, he refused an alcohol test, left the state, and used illegal drugs — all of which violated his probation. Moreover, Ms. Knippen testified about Edie's sexual abuse by Appellant. Ms. Knippen testified to the lack of involvement by Ms. Stokes and the drug use of Ms. Stokes. Ms. Knippen testified that Edie is doing well in her present environment and that if Edie has to change environments the bedwetting incidents and nightmares she hade been suffering from may return.
Additionally, Pam Fledderjohann, a social service worker at the Auglaize Department of Human Services, testified that Ms. Stokes did not have a permanent residence and could not work on the goals of the second case plan. Ms. Stokes was in Ohio in November 1997, but she did not comply with the requests of the Department of Human Services. Moreover, Ms. Stokes admitted that she had recently used illegal drugs. Ms. Fledderjohann also stated that neither Appellant nor Ms. Stokes accomplished any of the goals in the second case plan. Ms. Fledderjohann also testified that Edie's foster parents indicated a willingness to adopt her and that adoption would be positive for Edie because of the stability it would provide.
Dennis Morgan, Appellant's parole officer, testified that Appellant had problems complying with the conditions of his probation. Appellant had problems entering counselling, testing positive to drug use, and keeping full time employment.
The record contained information that Appellant sexually abused Edie and that Appellant is currently serving a five year prison sentence. The record also clearly demonstrated the lack of interest by Ms. Stokes in Edie's well-being.
Upon review of all the evidence that was before the trial court, each of the factors set forth in R.C. 2151.414, as well as all other factors relevant to a determination of what was in Edie's best interest, we find that the standard of proof required by R.C. 2151.414 has been met. Accordingly, Appellant's second assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 BRYANT and EVANS, JJ., concur.
[1] State v. Jones (July 22, 1998), Auglaize App. No. 2-98-1, unreported.
[2] Shirley Dawson, Edie's counselor, stated that having to testify in person could possibly damage the progress she made with Edie. Ms. Dawson also testified that Edie was fearful that Appellant would try to get even with her for testifying about the sexual abuse. Patricia Knippen, supervisor for the Children Services Unit of the Auglaize Department of Human Services, testified that Edie had bedwetting incidents when she first went into foster care and that the bedwetting incidents returned when she was notified she had to testify at Appellant's criminal case. Ms. Knippen also testified that Edie was frightened about testifying.