OPINION
On May 5, 1999, the Muskingum County Grand Jury indicted appellant, James McAfee, on one count of aggravated robbery in violation of R.C.2911.01. Said charge arose from the robbery of Gary Rush and Rich Rhoades on April 27, 1999. A jury trial commenced on April 4, 2000. The jury found appellant guilty as charged. By entry filed May 24, 2000, the trial court sentenced appellant to six years in prison. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of Error are as follows:
 I THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO MAKE THE WRITTEN JURY INSTRUCTIONS, PROVIDED TO THE JURY, A PERMANENT PART OF THE RECORD FOR USE ON APPEAL.
 II THE VERDICT OF CONVICTION OF AGGRAVATED ROBBERY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III THE TRIAL COURT ERRED IN PREVENTING THE DEFENSE FROM PURSUING ISSUES REGARDING RACIAL PREJUDICE BY SO-CALLED VICTIM, RICK RHOADES.
 IV THE TRIAL COURT ERRED IN IMPOSING "BAD TIME" PURSUANT TO REVISED CODE § 2967.11 AS PART OF THE SENTENCE.
 I
Appellant claims the trial court erred in failing to make the written charge a part of the permanent record. We disagree. In support of his argument, appellant cites R.C. 2945.10(G) which states as follows: The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case.
However, Crim.R. 30(A) provides in pertinent part the following: At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.
Pursuant to Crim.R. 1(C), Crim.R. 30 supercedes R.C. 2945.10: * * * Where any statute or rule provides for procedure by a general or specific reference to the statutes governing procedure in criminal actions, the procedure shall be in accordance with these rules.
In Rockey v. 84 Lumber Company (1993), 66 Ohio St.3d 221, 224-225, the Supreme Court of Ohio held the following:
The Civil Rules are the law of this state with regard to practice and procedure in our state courts. Bishop v. Grdina (1985), 20 Ohio St.3d 26,28, 20 OBR 213, 214, 485 N.E.2d 704, 705-706. The Ohio Rules of Civil Procedure, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern procedural matters. See Simon v. St. Elizabeth Med. Ctr. (C.P. 1976), 3 O.O.3d 164, 355 N.E.2d 903; Graley v. Satayatham (C.P. 1976), 74 O.O.2d 316, 343 N.E.2d 832; see, also, Jacobs v. Shelly Sands, Inc. (1976),51 Ohio App.2d 44, 47, 5 O.O.3d 165, 167, 365 N.E.2d 1259, 1262; In re Vickers Children (1983), 14 Ohio App.3d 201, 204, 14 OBR 228, 231,470 N.E.2d 438, 442. This interpretation is the only one consistent with the original reason for adopting Section 5(B), Article IV of the Ohio Constitution — that of constitutionally granting rule-making power to the Supreme Court. In re Vickers Children, supra. [Footnote omitted.]
Based upon the foregoing, we find the trial court was not obligated to provide the jury with a written copy of the instructions. Appellant argues the trial court did in fact provide a written copy of the instructions to the jury therefore, it should have been made a part of the record. Pursuant to a stipulated order submitted by the parties to this court on November 30, 2000, the trial court cannot recall "whether the instructions were in fact provided to the jury." The parties agree "[n]o written instructions were returned by the jury and/or made a part of the record after the verdict was returned." From our review of the record, we are unable to determine whether or not the jury received a written copy of the instructions. We note the stipulation states "neither side objected to the jury instructions as written." There is no claim that the trial court erred in instructing the jury. Assignment of Error I is denied.
 II
Appellant claims the jury's verdict was against the manifest weight of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Appellant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1) which states as follows: (A) No person, in attempting or committing a theft offense, as defined in section2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
Appellant argues the victims by their own admission were drunk, and the testimony of the co-defendant, Gary Rush, lacked credibility. We disagree that all of the evidence lacked credibility. When questioned by investigators, appellant admitted to partying with the victims, Mr. Grant and Mr. Rhoades, and driving around with them to purchase drugs. T. at 335. Both victims testified to the same activities that evening. T. at 174-195, 245-265. The victims were drinking at bars until 2:30 a.m. and then went to a party and drank. T. at 178, 181, 248, 250. At the party, the victims met up with appellant and Mr. Grant arranged for appellant to purchase drugs for him for $100. T. at 184-185, 255. After appellant supplied the drugs, all four individuals, appellant, the co-defendant and the two victims, returned to the party until Mr. Grant complained that the drugs were fake. T. at 188, 257. All four left the party to get their money back. T. at 191, 257-258. Appellant directed the driver, Mr. Rush, on where to go and what to do. Appellant stopped at various locations and at one stop, he picked up a shotgun. T. at 193-194, 262. Appellant then directed Mr. Rush to drive out into the country to an oil well and told everyone to get out of the vehicle. T. at 195, 263-264. Appellant used the shotgun to force the victims to remove their clothing and told Mr. Rush to gather up the clothes. T. at 195-196, 265-266, 268. Mr. Grant had approximately $500 on him and Mr. Rhoades's wallet contained some money. T. at 189, 268. A farmer, Albert Crock, saw Mr. Rhoades coming onto his property with no clothes on but his socks. T. at 128. Mr. Crock assisted Mr. Rhoades and called the sheriff. T. at 129-130. Sheriff deputies found Mr. Grant, also clothesless, at the same location. T. at 135. The deputies recovered the victims' pants along the roadway. T. at 141-142. While being taken to the sheriff's office, Mr. Rhoades spotted the vehicle he had been traveling in. T. at 143-144. The deputy followed the vehicle until it parked. T. at 144-145. When the occupants of the vehicle exited, Mr. Rhoades identified them as being the robbers. T. at 145. The individuals were appellant and Mr. Rush. When Mr. Grant arrived on the scene, he identified them also. T. at 170. Mr. Rhoades's penknife was found in the vehicle. T. at 272, 303. Mr. Rush told precisely the same story with emphasis as to his lack of knowledge. T. at 359-369. The resident of the home where appellant got the shotgun testified that appellant asked for the weapon to have "firepower" to get money back. T. at 294. The identical direct testimony and the circumstantial evidence about the shotgun and the area, coupled with appellant's admission of being with the victims, lead us to conclude the jury did not lose its way in finding appellant guilty. Upon review, we find sufficient evidence to convict appellant and no manifest miscarriage of justice. Assignment of Error II is denied.
 III
Appellant claims the trial court erred in preventing defense counsel from pursuing issues of racial prejudice. We disagree. Appellant argues because one of the victims, Mr. Rhoades, had previously been convicted of the crime of ethnic intimidation, he should have been able to cross-examine him on the issue of racial prejudice. Mr. Rhoades is white and appellant is black. Evid.R. 609 governs impeachment by evidence of conviction of crime and states as follows: For the purpose of attacking the credibility of a witness:
 (1) subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.
* * *
 (3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.
Apparently, Mr. Rhoades had a prior conviction for ethnic intimidation. Said crime does not involve "dishonesty or false statement." Appellant did not establish what punishment appellant received. If appellant was convicted of the crime as a misdemeanor, he would not have been sentenced "in excess of one year." Based upon Evid.R. 609, the trial court was correct in preventing defense counsel from cross-examining Mr. Rhoades on his prior conviction. Further, we note defense counsel questioned Mr. Rhoades on whether or not he had ever called anyone racial names and Mr. Rhoades testified in the affirmative. T. at 281. Mr. Rhoades even admitted to having problems with ethnic intimidation in the past. Id. Clearly appellant was able to expose potential bias on the part of Mr. Rhoades. Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in imposing "bad time." We disagree. In support of his argument, appellant cites the case of State ex rel. Bray v. Russell (2000), 89 Ohio St.3d 132, wherein the Supreme Court of Ohio held portions of R.C. 2967.11 relating to "bad time" are unconstitutional. Bray was decided on June 14, 2000, after the trial court's sentence of May 24, 2000. At the time of appellant's sentence, the "bad time" provisions were constitutional and therefore the trial court did not err in imposing same. Based upon the Bray decision, the imposition of "bad time" in appellant's sentence is moot. Assignment of Error IV is denied. The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.
By Farmer, J. Hoffman, P.J. and Reader, V.J. concur.