OPINION
Appellant, Ellen Payton, appeals from the decision of the Belmont County Court of Common Pleas, Juvenile Division granting permanent custody of her children to appellee, the Belmont County Department of Job and Family Services.
On January 20, 2000 appellant and her husband at the time, Curtiss Sypher (Curtiss), sent their two children, Sonya (d.o.b. 6/6/95) and Andrew (d.o.b. 7/10/96), to live with their paternal aunt and uncle, Judy and Aaron Kiser, in Belmont County, Ohio. Appellant stated that she sent the children to live with the Kisers due to an incident involving Curtiss. Appellant testified that they had recently moved from Washington to Colorado because Curtiss found a new job in Denver. She testified that they could not find housing and were living in a homeless shelter. While they were living at the shelter, a woman accused Curtiss of raping her. Curtiss was charged with indecent exposure and false imprisonment. Appellant signed over temporary custody of the children to the Kisers while she stayed with Curtiss until his sentencing. She testified that the Kisers coerced her to sign over custody of the children and that she did not want to do it. Curtiss pled guilty to the charges and the trial court in Colorado sentenced him to two years probation. As terms of his probation, Curtiss was not permitted to leave the state of Colorado or to have contact with children. After Curtiss was sentenced, appellant moved to Idaho into her sick father's home. Appellant testified that the plan was for the Kisers to return the children to her in Idaho when they were to visit for a wedding in June.
While the children were in the Kisers' care, Judy hit Sonya's head against a kitchen counter leaving a raised bruise. Because of this incident, appellee took emergency temporary custody of the children on May 5, 2000.
Appellant attended a hearing on the status of the children in July of 2000. Appellee put in place a case plan for appellant that required a home study and counseling. Appellant began preparing the house in Idaho for herself and her children. However, during this time, her father's health was rapidly deteriorating. Appellant's father moved into an assisted living facility and, a few months later, passed away. The Idaho Department of Health and Welfare (IDHW) performed the home study during this time and, according to appellant's caseworker, appellant did not pass the home study. After a month or two passed, appellant requested another home study. A magistrate denied this request.
Appellee filed a motion to modify temporary custody to permanent custody on March 26, 2001. It stated in its motion that it was asking for permanent custody because appellant had failed the home study and Curtiss was still on probation and not permitted around the children. Appellant and Curtiss were divorced on April 10, 2001 and appellant was awarded custody of the children in the divorce, although they were still in appellee's temporary custody.
On June 28, 2001, the trial court held a hearing on appellee's motion for permanent custody. The court entered judgment on July 9, 2001 granting permanent custody of the children to appellee and affirming the magistrate's decision denying a second home study. Appellant filed a timely notice of appeal. Curtiss also filed a notice of appeal from the court's judgment, but has since dismissed his appeal.
Appellant alleges three assignments of error, the first of which states:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW BY ALLOWING THE TESTIMONY, UNDER OATH, OF GUARDIAN AD LITEM, ELAINE SKORICH, FOR THE REASON THAT SUCH VIOLATED THE EXPRESS PROVISIONS OF R.C. 2151.414(C) AND FURTHER THAT SUCH TESTIMONY WOULD BE HEARSAY"
Appellant argues that the trial court should not have permitted guardian ad litem, Elaine Skorich (Skorich), to testify at the hearing on the issue of the children's permanent custody. She asserts that R.C.2151.414(C) clearly states that a guardian ad litem's report is not to be submitted under oath. She points out that her attorney noted a continuing objection to Skorich's testimony.
Additionally, appellant argues that the court should not have allowed Skorich's testimony because it was hearsay. She asserts that since Skorich's report focused on the investigative reports of others, which appellee did not submit under oath, her testimony was hearsay. Citing, Inre Duncan/Walker Children (1996), 109 Ohio App.3d 841. She claims that no hearsay exception exists to permit this type of testimony.
Evidentiary rulings lie within the broad discretion of the trial court. Such rulings will not be reversed on appeal absent an abuse of that discretion which amounts to prejudicial error. State v. Lundy
(1987), 41 Ohio App.3d 163, 169. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
2151.414(C) states that "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing * * * but shall not be submitted under oath." The statute does not state that the guardian ad litem herself shall not testify under oath, only that the report shall not be submitted under oath. Accordingly, the court properly permitted Skorich to testify.
Skorich did make numerous hearsay statements during the course of her testimony, to which appellant noted a continuing objection. Hearsay is not admissible in adversarial juvenile court proceedings at which a parent may lose the right to custody of his or her children. In re VickersChildren (1983), 14 Ohio App.3d 201, 206. However, since the judge acts as the factfinder and is presumed to be able to disregard hearsay statements, the person against whom the hearsay statements are admitted in such a case must show that the statements were prejudicial or that the judge relied upon them in making his decision. Id.
In this case, Skorich testified as to what several other people had told her. She testified that appellant's case manager, Lora Ohlensehlen (Ohlensehlen), told her about an inheritance appellant received from her father. She testified about a conversation she had with Ohlensehlen and a letter she received from her. Skorich testified that Ohlensehlen told her that appellant had a limited mental ability and that appellant refused to be tested for a mental disability. Skorich further testified that Ohlensehlen told her that she was concerned about appellant's recent marriage to David Payton (Payton) because he had a history of abuse.
Skorich also testified about information she gained from the home study. The home study was not presented as evidence, nor was made a part of the record. Skorich testified that the home study stated that appellant had a history of mental health problems. She also testified that the home study indicated that appellant has a lack of family and community support in Idaho.
The court makes it clear that it relied on this hearsay evidence in reaching its decision. It stated in its judgment entry that the IDHW had concerns regarding appellant's history of mental health problems, her lack of family and community support, her low functioning, and her ability to maintain a stable home environment. The court stated that these facts were significant in determining the best interests of the children. The court also found that appellant's marriage to Payton was detrimental to the well being of the children. Some independent evidence existed as to appellant's mental health problems. Appellant testified that she is a clinical manic-depressive and that she attends counseling. However, the evidence regarding appellant's lack of family and community support, her low functioning, her ability to maintain a stable home environment, and her marriage to Payton being detrimental to the children were only contained in hearsay statements.
Accordingly, appellant's first assignment of error has merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ITS MISAPPLICATION OF R.C. 2151.413"
R.C. 2151.413 addresses motions for permanent custody. Section (D)(1) provides, in pertinent part:
 "Except as provided in division (D)(3) of this section, if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child. * * *. For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home." R.C. 2151.413(D)(1).
Appellant argues that the court failed to apply the word "consecutive" in the statute. She states that since appellee took custody of the children on May 5, 2000, the twenty-two month period will not end until March of 2002. Therefore, appellant argues that the court could not analyze this case pursuant to R.C. 2151.413. She claims that the trial court should have analyzed this case pursuant to R.C. 2151.414(B)(1)(a) which states that the court must find that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. Since the trial court did not make the findings necessary under R.C. 2151.414(B)(1)(a), appellant claims that the court erred in granting appellee permanent custody of the children.
There is no requirement in the statute that an agency must wait until the entire twenty-two month period has run before filing a motion pursuant to R.C. 2151.413(D)(1). See In re Lazar (Feb. 25, 2000), Portage App. Nos. 98-P-101 and 98JFC706, unreported, 2000 WL 235050. However, appellee took emergency custody of the children on May 5, 2000. The children have been in appellee's custody since that date. The trial court granted appellee temporary custody of the children on July 26, 2000. Appellee filed its motion for permanent custody on March 26, 2001, almost eleven months after it assumed custody of the children. R.C. 2151.413(A) states that a public children services agency that "is granted temporary custody of a child who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child." Appellee properly filed its motion according to this section.
Once an agency files a motion for permanent custody of a child pursuant to R.C. 2151.413, the court must conduct a hearing to determine if it is in the child's best interest to grant permanent custody to the agency. R.C. 2151.414(A)(1) and (2). The court must consider not only the child's best interest, but also must find by clear and convincing evidence that one of the following apply:
 "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
"(b) The child is abandoned.
 "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home." R.C. 2151.414(B)(1).
The court did not find that Sonya and Andrew were abandoned or orphaned, so subsections (b) and (c) do not apply. Nor did the court specifically find that the children could not be placed with either parent within a reasonable time, so subsection (a) does not apply.
The court did find that the children had been in and out of home placement for at least twelve out of the last twenty-two months. For the purposes of computing the twenty-two month requirement, the time started to run sixty days after the agency removed the children from home, which was May 5, 2000. Accordingly, the twenty-two month period started to run for Sonya and Andrew on July 4, 2000. The children had been in appellee's custody for twelve months when the court found that they had been in an out of home placement for twelve of the past twenty-two months and entered judgment.
Accordingly, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT GRANTING THE APPELLANT MOTHER, ELLEN SYPHER-PAYTON, A SECOND HOME STUDY AND BY FINDING THAT THE TERMINATION OF PARENTAL RIGHTS WAS IN THE BEST INTEREST OF THE CHILDREN AND SUPPORTED IN THE RECORD BY CLEAR AND CONVINCING EVIDENCE"
The IDHW conducted appellant's home study in November or December of 2000. Appellant requested another home study, which a magistrate denied. The trial court subsequently upheld the magistrate's decision in its July 9, 2001 judgment entry. The magistrate's decision is not included in the record.
Appellant argues that the court granted permanent custody of her children to appellee because it felt that adoptive parents could provide better care for them. Appellant spends several pages explaining why her home was in the condition it was in when the IDHW conducted the home study and how she has improved the condition of the house. She points to things like buying a new vacuum cleaner, washing walls, and attending counseling and parenting classes to show her improvement. She asserts that the court abused its discretion in denying her a second home study. She further claims that the trial court did not have clear and convincing evidence on which to grant custody to appellee.
A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
R.C. 2151.414(D) provides factors the court is to consider in determining the child's best interest. They include, but are not limited to:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
As to the best interest factors, the parties did not present any evidence as to Sonya's and Andrew's interaction with each other or their care providers. Amy Faulkner (Faulkner), the Syphers' caseworker, testified that Sonya asks about appellant and says she misses her. Both children have been in appellee's custody for at least twelve months. Faulkner testified that the children need permanency in their lives and should be placed for adoption. None of the factors mentioned in R.C.2151.414(D)(5) apply.
The evidence adduced at the hearing does reveal the following. Faulkner testified that when appellee took custody of the children it put in place a case plan for appellant. The case plan included only two objectives: appellant was to cooperate with counseling and to pass a home study.
As to the counseling objective, it appears that appellant has been complying with this goal. Appellant testified that she has been attending counseling at Magic Valley Counseling every week since April of 2000. She stated that she had only missed two counseling session recently due to some dental work and to a health problem of her husband's. She also testified that her counselor recommended that she get involved with Independent Care Services (ICS), which she did. Appellant testified that ICS has helped her address community-type issues. Additionally, before divorcing Curtiss, appellant completed parenting classes.
Faulkner testified that appellant has been seeing a counselor at Magic Valley Counseling at least since June of 2000. She also testified that she was aware that appellant was attending counseling-type services with ICS. Faulkner testified that when appellee filed for permanent custody, appellant had been attending counseling and complying with this case plan goal. She further testified that the major factor in appellee's decision to file for permanent custody was appellant's failed home study.
As to the second case plan goal, both Faulkner and Skorich testified that, according to the home study, appellant did not pass. However, appellant and Faulkner testified that at the time IDHW performed the home study, appellant was going through difficult times with her father as his health was rapidly deteriorating. Appellant recognized that the house was not ready for the children at that time and she testified that, since then, she made substantial improvements to the house to prepare it for her children. Appellant testified that she washed walls, moved boxes, bought a new vacuum cleaner, painted the kitchen, had an alarm installed on the house, bought new toys and clothes for the children and prepared beds for them.
The Ninth District Court of Appeals recently summed up the gravity that we must accord to a parent's right to raise her children. It stated:
 "Since permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case, parents must be afforded every procedural and substantive protection the law allows. In re Hayes (1997), 79 Ohio St.3d 46, 48, quoting In re Smith (1991), 77 Ohio App.3d 1. See, also, In re Sadiku (2000), 139 Ohio App.3d 263. An action to terminate parental rights in cases of abuse, neglect, or dependency must balance the liberty interests of parents against the rights of the children to be free from harm from their parents. See Lassiter v. Dept. of Soc. Serv., (1981), 452 U.S. 18, 27. `The fundamental liberty interest of natural parents in the care, custody, and management of their child[ren] does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the [s]tate.' Santosky, supra, at 753. Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children. See In re Cunningham (1979), 59 Ohio St.2d 100, 105." In re Woodall (June 13, 2001), Summit App. Nos. C.A. 20346 and C.A. 20436, unreported, 2001 WL 651540 at *15.
Given the magnitude of a parent's fundamental right to raise her children, the trial court abused its discretion in denying appellant's request for a second home study. Furthermore, appellee did not establish by clear and convincing evidence that it is in Sonya's and Andrew's best interests that the court grant their permanent custody to appellee. Accordingly, appellant's third assignment of error has merit.
For the reasons stated above, the trial court's grant of permanent custody is hereby reversed and the case is remanded with the order that appellant be granted a second home study.
Vukovich, J., and DeGenaro, J., concurs.