OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division. That court terminated the parental rights of the natural mother and of appellant, the putative father, and awarded permanent custody of the two minor children, Alexis W. and Latoar W., aka, LaToya G., to appellee, Lucas County Children Services ("LCCS"). Because we find that the trial court's judgment is supported by clear and convincing evidence, we affirm.
The facts of this case are undisputed. Prior to the inception of the instant case, the parental rights of Georgeanna W., the natural mother of Alexis and Latoar, to her five other children were terminated. Appellant was the alleged father of three of these other children; however, appellant never established paternity with regard to any of the children, including Alexis and Latoar. Both the natural mother and appellant received extensive services from the LCCS in the past, but showed little or no progress in their ability to parent or in improving their relationship.
Both Georgeanna and appellant have an established history of domestic violence between them. In the summer of 1998, LCCS received a referral involving domestic violence and a failure to thrive on the part of Alexis, who was then two years old. Latoar was not born until September 1998. At the time of the referral, appellant was incarcerated for an assault on Georgeanna.
Rather than institute a proceeding in the juvenile court, LCCS initially chose to become involved with Georgeanna and her children on an informal basis. The children services agency proposed a safety plan which provided that appellant could not have contact with Georgeanna and the children unless another adult was present. Mother was also offered services, including a community specialist and two family advocates. LCCS recommended continued participation in Project Grow, a program which Georgeanna attended due to Alexis' nonorganic failure to thrive, for instruction on nutrition and the proper feeding of Alexis.
When appellant was released from jail, he went to Georgeanna's home to see the children. Because her brother was there to supervise the visit, appellant became very angry. He "basically threw the baby [presumably Latoar]" at Georgeanna's sister-in-law and left. He was also observed with Georgeanna in parking lot to the building where nutrition classes were held. Georgeanna claimed that he accosted her on the way to class and threatened her. Moments later, appellant entered the class and continued to harass Georgeanna by making cutting remarks about her and her ability to make decisions. At one point appellant said that he did not want his child to be heavy and that he wanted Georgeanna to lose some weight, too. Appellant was informed that there was a court order barring contact with the mother and, after some discussion, he finally left.
While appellant did attend several classes in the Project Grow program, he seemed unable to understand the concept of a failure to thrive. For nine or ten months, Alexis did not gain any weight and, as a result, is going to have medical and, perhaps, learning problems in the future. At the dispositional hearing, Georgeanna testified that it would be in the best interest of the children to terminate her parental rights and place the children in her brother's home. She stated that the children would be provided better care and that such a placement would prevent appellant from seeing the children. She said she felt the children would be "more safer" with her brother.
Because of the continued domestic violence, Georgeanna's inability to apply the nutrition and feeding principles learned in the Project Grow program and her inability to protect her children from appellant, as well as missed medical appointments for the children, LCCS determined that these parents were unable to progress in the care of their children. On October 26, 1998, LCCS filed a complaint seeking permanent custody of Alexis and Latoar. They alleged that the children were dependent and neglected. The adjudicatory and dispositional hearings were held on January 14, 1999. Although he was again incarcerated and was not present at the hearings, appellant was notified of the proceedings by certified mail pursuant to R.C. 2151.29. Appellant was also represented by counsel at the hearings.
After the hearings, the court entered a judgment adjudicating the children dependent and neglected and granting the agency's complaint for permanent custody. Appellant appeals and sets forth the following assignments of error:
 "THE TRIAL COURT ERRED IN FINDING THAT THE LUCAS COUNTY CHILDREN SERVICES BOARD [sic] HAD MADE A GOOD FAITH EFFORT TO REUNIFY THE MINOR CHILDREN WITH APPELLANT."
 "THE TRIAL COURT ERRED IN GRANTING LUCAS COUNTY CHILDREN SERVICES BOARD'S [sic] MOTION FOR PERMANENT CUSTODY AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The law applicable to appellant's assignments of error is found in R.C. Chapter 2151.
R.C. 2151.353(A)(4) sets forth the procedure to be followed and standard to be applied in cases where a children services agency's original complaint requests permanent custody of an abused, neglected or dependent child. In re Pachin (1988),50 Ohio App.3d 44, 46-47. R.C. 2151.353(A)(4) provides that the court can commit a child adjudged dependent, neglected or abused to the permanent custody of a public children services agency if it makes the determinations required under R.C. 2151.414. The agency must offer clear and convincing evidence to establish that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents.
If, after considering all the relevant evidence, the court determines, by clear and convincing evidence, that one or more of the conditions listed in R.C. 2151.414(E) exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents. R.C. 2151.414(E). Finally, under R.C. 2151.414(D), a juvenile court must consider the best interests of the child by examining factors relevant to that case.
Only if these requisites are supported by clear and convincing evidence, can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996), 75 Ohio St.3d 95. Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, a petitioner must prove each of its allegations by producing "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In his first assignment of error, appellant contends that the trial court erred in finding that LCCS made a good faith effort to reunify appellant with his children because the agency did not establish the existence of the condition in R.C. 2151.414(E)(1). Therefore, appellant reasons that the juvenile court could not enter the statutorily required determination that the children could not be placed with appellant within a reasonable time or should not be placed with him. R.C. 2151.414(B)(1). Specifically, appellant maintains that LCCS failed to show that the agency made a diligent effort to assist him in remedying the problems that caused the removal of Alexis and Latoar from the home or to "reunify" him with his children. He further asserts that LCCS did not prove, by clear and convincing evidence, that appellant "failed continuously and repeatedly for at least six months to substantially remedy the conditions causing" his children to be removed.
Initially, we note that the trial court did not find that LCCS made "good faith" efforts to reunify appellant with his children. Rather, if applicable to this case, the court found that the agency engaged in reasonable case planning and diligent efforts as required by R.C. 2151.414(E)(1). Second, this was an original complaint for permanent custody filed pursuant to R.C. 2151.353(A)(4). If, as here, permanent custody is awarded to the county children services agency, the county is not required to formulate or implement a reunification plan. In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229, 234; In re Cornish (June 11, 1997), Butler App. No. 18082, unreported. Third, appellant cites to a former version of R.C. 2151.414. As effective in August 1996, the statute eliminated the six month requirement. Because the complaint in this case was filed in 1998, the 1996 amendment of R.C. 2151.414(E)(1), not the former version, controls.
Nonetheless, this court recently determined that a juvenile court's determination of the existence of the condition in R.C.2151.414(E)(1) cannot be sustained in a case such as the one before us. See In the Matter of: Scott O., Fontez R., XavierR., Dion R., Dontrice R. Shanton R. (Sept. 17, 1999), Lucas App. No. L-99-1012, unreported.
R.C. 2151.414(E)(1) provides, in relevant part;
 "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
In Scott O., this court held that in order to satisfy the requirements of R.C. 2151.414(E)(1):
"1. The child must be placed outside the home;
 "2. After which, the public agency must, through reasonable case planning and diligent efforts, attempt to help the parents remedy the causes of the child's removal from the home;
 "3. Even with such planning and effort, the parent must fail continuously and repeatedly to remedy the condition which caused the child's removal;
 "4. The burden is on the public agency to prove all of these elements by clear and convincing evidence." In the Matter of: Scott O., supra.
Here, no evidence was offered to show agency efforts to reunifyafter the children were removed from the home. Id. Thus, the trial court's determination of the existence of the predicate condition in R.C. 2151.414(E)(1) in order to find that Alexis and Latoar could not be placed with appellant within a reasonable time or should not be placed with appellant cannot be sustained.
Nevertheless, the court also cited to the existence of another condition, R.C. 2151.414(E)(11) as the basis for its finding. The existence of only one of twelve enumerated conditions[1] in the statute is sufficient to support such a finding. Because we find that clear and convincing evidence was offered to support the existence of this condition, the juvenile court's error in relying on R.C. 2151.414(E)(1) was not prejudicial to appellant.
For all of the foregoing reasons, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant again focuses on an alleged lack of clear and convincing evidence to support the existence of the predicate condition set forth in R.C.2151.414(E)(1). He claims that the trial court's judgment is against the manifest weight of the evidence on the question of whether he remedied the conditions that caused the removal of Alexis and Latoar from Georgeanna's home. However, R.C.2151.414(E)(1) is inapplicable under the facts of this case. Instead, we find that the court's judgment as it relates to R.C.2151.414(E)(11) is supported by clear and convincing evidence.
R.C. 2151.414(E)(11) sets forth the following condition as a basis for a finding that a child cannot be placed with either parent within a reasonable time or should not be placed with that parent:
 "The parent * * * caused or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling;"
R.C. 2151.03(A) defines a neglected child as:
 "(1) Who is abandoned by the child's parents, guardian, or custodian;
 "(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 "(3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being;
 "(4) Whose parents, guardian, or custodian neglects the child or refuses to provide the special care made necessary by the child's mental condition;
 "(5) Whose parents, legal guardian, or custodian have placed or attempted to place the child in violation of sections 5103.16 and 5103.17 of the Revised Code;
 "(6) Who, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare;
 "(7) Who is subjected to out-of-home care child neglect."
There is no evidence in the record of this case to show that appellant had legal custody of or resided with these two children or that he had a substantial relationship with them. He has never been named the legal father of Alexis and Latoar. The evidence offered at trial indicated that on one occasion, he literally threw his infant daughter at Georgeanna's sister-in-law. He attended a few of the classes at Project Grow but displayed no understanding of the importance of proper nutrition for a growing child. Appellant disobeyed a court order by insisting on seeing Georgeanna and followed her into the Project Grow learning center, interfering with any progress she might try to make. He was incarcerated twice during the course of this case and at least one of these incarcerations was the result of assaulting the natural mother.
Assuming, without deciding, that appellant is the biological father of Alexis and Latoar, a review of the facts of this case, as set forth above, reveals clear and convincing evidence was offered to show that appellant neglected Alexis and Latoar within the meaning of R.C. 2151.03. Further, the children were adjudicated dependent and neglected children and appellant does not challenge this adjudication. Three other siblings were removed from Georgeanna's home and adjudicated abused or dependent and neglected. Therefore, the requisites of R.C. 2151.414(E)(11) were satisfied, and the trial court did not err in entering a finding that Alexis and Latoar could not be placed with appellant within a reasonable time or should not be placed with appellant. Accordingly, the trial court's judgment is not against the manifest weight of the evidence. Appellant's second assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J., Melvin L. Resnick, J.,James R. Sherck, J., concur.
[1] As effective at the inception of this case. The newest version of R.C. 2151.414 became effective on March 18, 1999.