This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division. That court terminated the parental rights of appellant, Stacey J., the natural mother, and of appellant, Jesse F., the putative father, and awarded permanent custody of Charnina J. to appellee, Lucas County Children Services ("LCCS"). Because we find that the trial court's judgment is supported by clear and convincing evidence, we affirm.
Charnina was born September 14, 1998 with severe physical problems. Her head is sunken in on the right side. The left side of her body is not growing; she has limited restricted movement on that side with little muscle tone and possible neurological damage. In addition, she has impaired hearing and developmental delays.
According to the parties, LCCS initially filed a motion for temporary custody of Charnina on September 16, 1998; she was adjudicated a dependent child and placed in the home of her maternal aunt, LaTonya J. Even though the parties agreed to a waiver of the ninety day limit in which the juvenile court must hold a dispositional hearing, LCCS decided to dismiss the case.
On January 20, 1999, LCCS filed an original complaint for permanent custody of Charnina. The adjudicatory and dispositional hearings were held on April 16, 1999. During the adjudicatory phase, Mellanine Webb, a caseworker with LCCS who worked with appellants from July 1995 until January 1999, provided the following testimony with regard to appellants' extensive involvement with LCCS. Stacey's seven other children, including three whose father is also Jesse, were removed from the home and placed in the legal custody of their maternal aunt or their maternal grandmother. According to Webb, the children were removed due to neglect, physical abuse, missed medical appointments, lack of supervision and unstable housing. One of the children ingested finger nail polish while being watched by his or her siblings, another fell out of a moving vehicle, a third has scars on his or her body and a fourth child was diagnosed with a failure to thrive.
Numerous services were offered to the parents over the years. These included anger management classes, parenting classes, domestic violence classes, substance abuse services, individual counseling for the children, day care services and case management services. Despite appellants' participation in some of these services, they were unable or unwilling to modify their behavior.
The natural parents had ongoing problems with domestic violence, including an incident in January 1998 when Stacey admitted stabbing Jesse and was in jail for three days. After she had completed anger management classes, Stacey attended a LCCS staffing meeting in September 1998. She became very angry when it was suggested that Charnina be placed in the care of her maternal aunt and left the room, slamming the door so hard that a clock fell off the wall. She later came back, but had to be escorted from the room by the deputy sheriff in handcuffs. On one occasion, Jesse threatened to "blow up" the children services building and "take out" LCCS. Webb said that at one of the proceedings involving Charnina, Stacey threatened to "beat her up." The parents also made threats against the judge and others involved in the custody proceedings.
Both parents acknowledged having problems with alcohol. In fact, Cheryl Reed, appellants' caseworker beginning in January 1999, testified that Stacey admitted that she drank alcohol for the first four and one-half months of her pregnancy with Charnina. Although LCCS suspected that Charnina suffered from fetal alcohol syndrome, she had not been diagnosed as of the date of the hearings on this matter.
In her written report Charnina's guardian ad litem
noted:
 "For a while it looked like Stacey [J.] might finally be reaching out for help. She entered a dual recovery program, where she had the benefit of a case manager, a therapist and a psychiatrist. However, from the last couple of encounters that I have had with Ms. [J.], it is not apparent that her behaviors have changed. In talking with both parents, `going off' is still the primary way of dealing with people and situations that displease them. This is not the behavior that is conducive to dealing with their youngest child's severe handicaps.
 "It now appears that Charnina may be suffering from Alcohol Fetal Syndrome [sic]. Tests have shown that she has very little hearing. Most of one side of her body is neurologically damaged and flaccid. She will require extensive physical therapy, hearing aids and will likely be seriously delayed. Both parents are in denial of her condition, or alternatively, saying that she was fine at birth and that someone must have caused this condition after she left the hospital. Neither one of them has been involved in her physical therapy or hearing evaluations, nor have they been involved with her daily extensive care. Denial does this sort of thing."
Based on all of the foregoing, the juvenile court adjudicated Charnina a dependent child.
During the dispositional phase, the past history of the parents was again discussed. Mellanine Webb was asked whether as a result of all the services offered to appellants, specifically with regard to domestic violence and anger management, she had seen any significant improvement in the parents' attitudes or conduct. She replied, "No." Reed testified that, in November 1998, she urged appellants to participate in substance abuse treatment and parenting and anger management cases. Jesse said he didn't need the services and would not be engaging in them. While Stacey was in treatment for a few months, she later told Reed that she stopped participating.
LaTonya described her sister's anger and how Stacey and Jesse were always fighting with someone in the community. She stated that both parents were abusive, both mentally and physically. She testified that she observed the parents' parental behavior over the years and saw no improvement.
LaTonya has custody of four of Stacey's children, including two who are also the children of Jesse. She also has cared for Charnina since the child was removed from the parents' custody. Even though LaTonya told Stacey that she was welcome to visit the children, Stacey visited only Charnina for an hour, once or twice per week. Jesse did not exercise his right to visit Charnina. LaTonya explained that on a previous occasion Jesse did not handle a situation with one of the older children well and she told him so. After that incident, Jesse stayed in the car instead of visiting with his children.
According to LaTonya, Charnina requires "a little bit more work." As of the time of the trial, her feeding was still difficult. Special care had to be taken in dressing the baby because of the problem with her left side. If the child rolled over, LaTonya had to roll her back because she was incapable of doing so herself. LaTonya was also required to perform physical therapy with Charnina to strengthen her muscles and to teach her how to position her left arm and head so that her muscles could work. Charnina also has many medical appointments-with a neurologist, physical therapist and her family doctor. Despite the problems, LaTonya expressed a strong desire to keep the children together as a family and related some of the activities, such as going to church, visiting with their siblings in the care of their grandmother, a slumber party, and a trip to Disneyworld, that they did as a family.
In her testimony, Stacey claimed that she would "jump the moon" to get Charnina back. However, she admitted that she was not participating in any services that might help her parent more effectively. Furthermore, she blamed the court, LCCS and her family members for the removal of her children from her care. When asked if any part of the situation was her fault, she replied, "First of all letting my mother know my business that is my fault. Letting my family [sic] involved is my fault." Stacey also admitted to drinking alcohol during the first four and one-half months of her pregnancy, but she claimed that she was not accountable because she did not know that she was pregnant. When cross-examined as to whether stabbing Jesse reflected on her ability to parent, she retorted, "One time. Big deal. Destroy me for that." Finally, Stacey stated that she did not visit with her children because she was not "allowed" to as long as she was with Jesse. When pressed about the issue, she said, "But they can't dictate [to me]."
In his judgment, the juvenile judge found, by clear and convincing evidence, that Charnina was a dependent child. He then went on to find that Charnina could not be placed with either of her parents within a reasonable time or should not be placed with either of their parents. He based this finding on a determination that (1) the mother's chronic mental illness is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court hearing, see R.C. 2151.414(E)(2); and/or (2) both parents demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child, see R.C.2151.414(E)(4). The juvenile court then held that it would be in the best interest of Charnina to grant permanent custody to LCCS.
Appellants' first assignment of error reads:
 "The Trial Court erred in not complying with ORC section 2151.414(A)(1) in that it allowed CSB to readjudicate past cases in the case at bar."
In this assignment, appellants address the interpretation of R.C.2151.414(A)(1), which reads, in relevant part:
 "The court shall conduct a hearing in accordance with section 2151.35 of the Revised Code to determine if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion. The adjudication that the child is an abused, neglected, or dependent child and any dispositional order that has been issued in the case under section 2151.353
of the Revised Code pursuant to the adjudication shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody."
Appellants contend that this portion of the statute clearly and unambiguously precludes evidence of past LCCS cases involving the parents of a child who is the subject of a complaint for permanent custody. Because evidence from prior cases involving the removal of several of appellants' children from the home was adduced during the adjudicatory and dispositional phases of the instant case, appellant asserts that this violates the statute. Apparently, they therefore conclude that the evidence should have been excluded and that, without this evidence, LCCS failed to offer clear and convincing evidence that Charnina is a dependent child or to provide clear and convincing evidence satisfying the requisites of R.C. 2151.414. Appellants' contentions are without merit.
Appellants misconstrue R.C. 2151.414(A)(1). The goal of statutory interpretation is to determine legislative intent as found in the words used by the General Assembly as well as the purpose to be accomplished by the statute. State v. Elam (1994),68 Ohio St.3d 585, 587. Thus, we must first look to the plain language of R.C. 2151.414. A plain reading of the disputed language reveals that during the dispositional phase of a hearing on a motion for permanent custody the court shall not readjudicate a previous finding that the child who is the subject of that case was dependent abused or neglected. In this case, LCCS filed, pursuant to R.C. 2151.353(A)(4), an original complaint for permanent custody. Thus, the court was required to first hold a hearing to determine whether Charnina was a dependent child. R.C.2151.35. Then, during the subsequent dispositional phase the court had to follow the strictures of R.C. 2151.414. See R.C.2151.353(A)(4). Here, the court did not readjudicate the issue of Charnina's dependency during the dispositional phase. Accordingly, appellants' first assignment of error is found not well-taken.
Appellants' second assignment of error asserts:
 "The Trial Court's judgment finding child dependent is not supported by any creditable [sic] evidence, and as such is against the manifest weight of the evidence."
In this assignment, appellant simply reiterates that all of the evidence offered during the phase of the hearing held to ascertain whether Charnina was a dependent child related to prior cases and was inadmissible because R.C. 2151.414(A)(1) bars such evidence. Again, that part of the statute is clearly inapplicable to a hearing held to determine whether a child is neglected, abused and/or dependent. Moreover, a review of the evidence as set forth above reveals that clear and convincing evidence was offered to establish that Charnina was a dependent child within the meaning of R.C. 2151.04(C), that is, she was a child whose home environment was such to warrant the state, in the interests of the child, to assume guardianship of Charnina. Therefore, appellants' second assignment of error is found not well-taken.
Appellants' third assignment of error reads:
 "The Trial Court's judgment as to the existence of the conditions set forth in ORC sections [sic] 2151.414 is not supported by clear and convincing evidence that:
 "A. an award of permanent custody is in the child's best interest.
 "B. the child cannot be placed with either of the parents within a reasonable time or should not be placed with either parent."
R.C. 2151.353(A)(4) sets forth the procedure to be followed and standard to be applied in cases where a children services agency's original complaint requests permanent custody of an abused, neglected or dependent child. In re Pachin (1988),50 Ohio App.3d 44, 46-47. R.C. 2151.353(A)(4) provides that the court can commit a child adjudged dependent, neglected or abused to the permanent custody of a public children services agency if it makes the determinations required under R.C. 2151.414.
At a hearing on the complaint, R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that (1) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, R.C. 2151.414(B)(1); and (2) a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B). The statute sets forth a list of twelve predicate conditions or factors, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E); In re William S. (1996), 75 Ohio St.3d 95, syllabus. The statute also enumerates certain factors for evaluating whether permanent custody with a children services agency is in the child's best interests. R.C. 2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(B). Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In the case at bar, appellants contend that no evidence, much less clear and convincing evidence, was offered to establish that Stacey has a chronic mental illness so severe that it makes her unable to provide an adequate permanent home for Charnina at the present time and as anticipated, within one year after the hearing on this matter. See R.C. 2151.414(E)(2), as effective September 18, 1996. We agree.
There was evidence offered to suggest that at one time Stacey had a "nervous breakdown" and/or was "severely depressed" and that she has problems controlling her anger. However, no psychological or psychiatric reports were offered into evidence to demonstrate that she has a "chronic mental illness." We are of the opinion that the lay testimony offered in this case is insufficient to establish, by clear and convincing evidence, such an illness. In other words, a finding of "chronic mental illness" must be supported by substantially greater evidence than was adduced in this case in order to justify the judicial abrogation of a natural parent's fundamental right to care for, have custody of, and manage her child. Santosky v. Kramer (1982),455 U.S. 745, 753.
Nevertheless, the juvenile court found that the condition or factor found in R.C. 2151.414(E)(4) existed. There was clear and convincing evidence in the record to support this finding. The parents' inability to take responsibility for their actions and to modify their behavior for the sake of their child, the depth of the anger displayed by these parents, Stacey's alcohol consumption during her pregnancy and the demonstrated incapacity to parent their other children all establish a lack of commitment/unwillingness to provide an adequate permanent home for Charnina. Because the court can base its dispositive finding upon the existence of just one of the conditions or factors in R.C.2151.414(E), error on the part of the trial court in finding that Stacey suffered from a chronic mental illness is harmless error. Accordingly, we conclude that clear and convincing evidence was offered to support the finding that Charnina cannot be placed within a reasonable time with either of her parents or should not be placed with either of her parents.
As to the best interest factors, clear and convincing evidence showed that Charnina, a special needs child, is in a home where her physical and developmental needs are being met. Since she was two days old she has been in the care of her aunt and is being raised with and interacts with her siblings as a family. Because of her physical difficulties Charnina requires a legally secure placement that cannot be achieved without a grant of permanent custody to LCCS. See R.C. 2151.414(D)(1)-(4). For all of these reasons, appellants' third assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal.
MELVIN L. RESNICK, J.
JAMES R. SHERCK, J. AND RICHARD W. KNEPPER, P.J., CONCUR.