OPINION
{¶ 1} Appellant Angelica Cross ("Angelica") appeals the judgment of the Allen County Common Pleas Court, Juvenile Division terminating her parental rights and granting permanent custody of her minor child to the appellee, Allen County Children Services Board ("agency").
 {¶ 2} Angelica is the minor mother[1] of Aleeyah Barnes ("Aleeyah"), who was born on January 29, 2002. Angelica and Aleeyah resided with Carolyn Cross ("Carolyn"), Angelica's biological mother. On October 25, 2002, Angelica, a sibling, and Aleeyah were removed from Carolyn's care after two incidents of domestic violence between Carolyn and her children. At the time of removal, the children had lived in the home for four days without any adult supervision. In November 2002, the agency filed an amended complaint alleging that Aleeyah was a dependent child based on the same reasons as the original removal. After holding adjudicatory and dispositional hearings, the trial court placed Aleeyah in the agency's temporary custody. The agency filed a case plan agreement, which raised two areas of concern. The first area of concern was Aleeyah's medical and mental conditions. The agency recommended a course of treatment and therapy to address this concern. The second area of concern was Angelica's lack of parenting skills. To address this concern, the agency specified that Angelica would actively participate in individual counseling and follow the recommendations of the counselor, attend school regularly unless excused by a physician or foster parent, actively participate in the treatment services provided to Aleeyah, and actively participate in parenting classes.
 {¶ 3} On November 10, 2003, the trial court extended the agency's temporary custody, and on January 21, 2004, the agency filed a motion pursuant to R.C. 2151.414(A) seeking permanent custody of Aleeyah. The agency cited Angelica's conviction for attempted gross sexual imposition,[2] the parents' failures to remedy the conditions that caused Aleeyah to be placed outside the home, the parents' lack of commitment to the child, and the parents' unwillingness to provide basic necessities for the child as reasons for terminating Angelica and Barnes' parental rights. Carolyn also filed a motion for legal custody on May 28, 2004.
 {¶ 4} Pursuant to R.C. 2151.414(A), the trial court held a permanent custody hearing on July 13, 2004 to consider the agency and Carolyn's motions for permanent custody. The trial court filed its judgment entry on May 12, 2005. During the hearing, the court heard testimony from Kimberly Cotterman, Holly Protsman, and Carolyn Cross. The court also admitted the following exhibits into evidence: a copy of a judgment order filed in Shelby County Juvenile Court case number 2002-FEL-0073 on August 4, 2003 and marked as ACCSB Exhibit 1; a copy of a judgment entry filed by the Allen County Common Pleas Court Juvenile Division on March 15, 2004 and marked as ACCSB Exhibit 2; and a copy of Angelica's psychological evaluation, marked as ACCSB Exhibit 3. Angelica appeals from the trial court's judgment and asserts the following assignments of error:
The trial court erred when granting permanent custody of theminor child as it pertains to the mother-appellant based uponO.R.C. section 2151.414(E)(7).
 The trial court erred when granting permanent custody of theminor child as it pertains to the mother-appellant based uponO.R.C. section 2151.414(E)(16).
 The trial court erred when it held that the Allen CountyChildren Services Board made "reasonable and good faith efforts"at reunification.
 {¶ 5} Initially, we emphasize the seriousness of this case. Parents have a fundamental right to care for and have custody of their children. In re Shaeffer Children (1993),85 Ohio App.3d 683, 621 N.E.2d 426 (citing Santosky v. Kramer (1982),455 U.S. 745). The United States Supreme Court has noted, "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents[.]" Stanley v. Illinois (1972),405 U.S. 645 (citation omitted). Therefore, permanently removing a child from his or her parents' care is an alternative of last resort, sanctioned only when the welfare of the child requires such action. See In re Wise (1994), 96 Ohio App.3d 619,645 N.E.2d 812; In re Cunningham (1979), 59 Ohio St.2d 100,391 N.E.2d 1034. The "[p]ermanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" In reHayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (quotation omitted).
 {¶ 6} Once an agency files a motion for permanent custody, the trial court must make several findings before parental rights can be terminated. The trial court must determine
by clear and convincing evidence, that it is in the bestinterest of the child to grant permanent custody to the agencythat filed the motion for permanent custody and that any ofthe following apply * * *
(a) The child is not abandoned or orphaned or has not been inthe temporary custody of one or more public children servicesagencies or private child placing agencies for twelve or moremonths of a consecutive twenty-two month period ending on orafter March 18, 1999, and the child cannot be placed witheither of the child's parents within a reasonable time or shouldnot be placed with the child's parents.
R.C. 2151.414(B)(1)(a) (emphasis added). Clear and convincing evidence has been defined as
"that measure or degree of proof which will produce in themind of the trier of facts a firm belief or conviction as to theallegations sought to be established. It is intermediate, beingmore than a mere preponderance, but not to the extent of suchcertainty as is required beyond a reasonable doubt as in criminalcases. It does not mean clear and unequivocal."
 In re Hershberger and Smith, 3rd Dist. Nos. 1-04-55 and 1-04-61, 2005-Ohio-429, at ¶ 18 (quoting Cross v. Ledford
(1954), 161 Ohio St. 469, 477, 120 N.E.2d 118 (citing Merrick v.Ditzler (1915), 91 Ohio St. 256, 110 N.E. 493)). In reviewing a trial court's decision made under the clear and convincing standard, an appellate court must "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Id. (citingCross, supra at 477). In this case, the trial court found that, "granting permanent custody to the Allen County Children Services Board is in the best interest of the child" and Aleeyah could not "be placed with either parent within a reasonable period of time and should not be placed with either parent", thus satisfying R.C. 2151.414(B). J. Entry, May 12, 2005, at ¶¶ 10, 14.
 {¶ 7} In determining the best interest of a child under R.C.2151.414(D), the trial court must consider:
all relevant factors, including, but not limited to, thefollowing:
 (1) The interaction and interrelationship of the child withthe child's parents, siblings, relatives, foster care-givers andout-of-home providers, and any other person who may significantlyaffect the child;
* * *
(4) The child's need for a legally secure permanent placementand whether that type of placement can be achieved without agrant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) ofthis section apply in relation to the parents and child.
In making its findings under R.C. 2151.414(D), the trial court found that
the child interacts well with the foster parents, and theirfamily and that the foster parents are providing for the needs ofthe child inclusive of the special medical needs. Further, theCourt finds that the child has been in the custody of AllenCounty Children Services Board and placed in the foster homesince October of 2002, where the child has improved both mentallyand physically. The child's need of a legally secure, permanentplacement can not be achieved without a grant of permanentcustody to the Agency.
J. Entry, at ¶ 12. The court's findings are supported by clear and convincing evidence in the record, which reveals that Aleeyah's physical conditions have been diagnosed, and she is receiving appropriate care through the agency and her foster family. The record also indicates that Aleeyah requires multiple doctors' appointments each month, multiple physical therapy sessions, and extensive physical therapy, massage, and "brushing" in the home.
 {¶ 8} The trial court must also consider the factors under R.C. 2151.414(E) to determine whether the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. The statute states in pertinent part:
If the court determines, by clear and convincing evidence, * * *that one or more of the following exists as to each of thechild's parents, the court shall enter a finding that thechild cannot be placed with either parent within a reasonabletime or should not be placed with either parent: * * *
(16) Any other factor the court considers relevant.
R.C. 2151.414(E)(7)(d); (16) (emphasis added). In this case, the trial court considered R.C. 2151.414(E)(16) and found that Angelica was "incapable of providing for the significant special needs of her daughter" due to "her psychological issues, lack of maturity, and lack of parental skills". J. Entry, at ¶ 9. The evidence clearly and convincingly supports the court's finding. On June 28, 2004, Walter M. Lawson, III ("Lawson"), Angelica's guardian ad litem, filed a report, which indicated that Angelica "is not at this point capable of doing what is necessary to raise Aleeyah — a special needs child, at the same time that [Angelica] needs to be progressing in her own emotional and educational development." On July 13, 2004, Jenny L. Sammet ("Sammet"), Aleeyah's guardian ad litem, filed a report and recommendation. In her report, Sammet wrote, "[w]hile this Guardian Ad Litem believes that Angelica loves her daughter and has good intentions, it is the opinion of this Guardian Ad Litem that realistically Angelica is not equipped to handle the immense pressure that will come with the goals she has for herself and Aleeyah."
 {¶ 9} The court also heard testimony regarding Angelica's parenting skills at the permanent custody hearing. The first witness was Kimberly Cotterman ("Cotterman"), Aleeyah's foster parent. Although Cotterman had not witnessed recent interactions between Angelica and Aleeyah, Cotterman had cared for Angelica and Aleeyah when they were removed from Carolyn's care, and she opined that Angelica had been unable to care for Aleeyah due to a lack of desire. Hearing Tr., Sep. 23, 2005, at 23-24. Cotterman also opined that Angelica "didn't have parenting skills and she may not have had those modeled for her. * * * she wasn't willing to change * * * I'm not sure if she has changed in the time since then, but it's hard. You have to want to change to change. You have to want to parent to parent." Id. at 24.
 {¶ 10} The court also heard testimony from Holly Protsman ("Protsman"), a caseworker with the agency. Protsman recommended that Aleeyah not be placed in Angelica's care because of "[t]he parenting, her mental instability, and the special needs of the baby. With [Angelica], also to care for this baby, she needs a strong social support and I don't think she has that." Id. at 49. While Protsman noted some personal improvement in Angelica, she stated, "[h]er parenting skills are limited, and that goes along with her underlying psychological impairments. To care for a special needs baby as a single parent with little and consistent social support is going to be very hard for her." Id. at 59-60. Protsman also testified that she would not place Aleeyah in Angelica's care due to Angelica's "mental health impairments" and lack of social support. Id. at 69, 85.
 {¶ 11} The trial court reviewed Angelica's psychological evaluation. In regard to Angelica's level of parenting, the evaluator indicated in pertinent part:
it does not appear that [Angelica] has been actively involvedin the physical and emotional care of her daughter. She herselflacks limit setting abilities and has not been a very positiverole model for developing appropriate coping mechanisms. Sheseems to have very little understanding of the physical needs ofher daughter * * * In essence, she has a very difficult timeaccepting the uniqueness of her daughter. It also appears thatbecause of her own psychological problems, she does not have therequisite ability to be emotionally available to her daughterother than to demonstrate through tears and anger that she missesher daughter and wants to be with her. * * * It seems like shelikely has a very difficult time distinguishing her needs fromthe needs and feelings of her daughter and therefore indeed mayhave a very difficult time meeting her own daughter's needsbecause she has yet to be able to meet her own psychologicalneeds. [Angelica's] acting out behavior certainly does not augerwell for her ability to show her young child how to tolerateanxiety and frustration. * * * Based upon the discussion above,it does not appear that [Angelica] has the requisite abilities asa parent to raise a child with special needs.
Id. at Ex. 3, p. 13. Based on this record, the trial court's finding as to R.C. 2151.414(E)(16) is supported by clear and convincing evidence. We note that this finding by itself is adequate to support a termination of parental rights based on a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(E). As such, the second assignment of error is overruled, and the first assignment of error is moot.
 {¶ 12} In the third assignment of error, Angelica argues that the agency has not made a reasonable and good faith effort at reunification. Angelica contends that she completed all of the requirements under the case plan agreement, except for the active involvement with Aleeyah. Angelica argues she could not be actively involved with Alleyah due to a no contact order imposed during sentencing for the attempted gross sexual imposition conviction.
 {¶ 13} A "decision to grant permanent custody to a county children's services agency must be predicated upon a finding by the trial court that the county has made a good faith effort at achieving reunification, that the parent has been unable to provide adequate parental care and will continue to be unable to do so in the future, and that it is in the best interest of the child to permanently terminate parental rights." In re Willis,
3rd Dist. No. 1-02-17, 2002-Ohio-4942, at ¶ 35 (citing In reHenderson (1986), 30 Ohio App.3d 187, 189, 507 N.E.2d 418; Inre Vickers Children (1983), 14 Ohio App.3d 201, 204,470 N.E.2d 438). The agency must make a "good faith" effort to reunite the family, which means the agency must make an honest and purposeful effort. Id. (citation omitted).
 {¶ 14} In this case, the agency made a good faith effort in reaching the goals set forth to address Aleeyah's medical and mental problems. In regard to the goals established to address Angelica's concerns, she attended summer school so she could graduate on time with the rest of her class, she was attending sex offender treatment at the time of the hearing, she has completed parenting classes, and she attended individual counseling until she was charged in the criminal matter. Hearing Tr., at 60; 65; 81. The agency was also prepared to assist Angelica in attending culinary school to help her pursue a career as a cook. Id. at 60. However, the no contact order, which prevented Angelica from completing the goals of her case plan, was put in place due to her own conduct, and not the conduct of the agency. The record supports both the agency's honest and purposeful effort to reunite this family and the trial court's finding that the agency made a reasonable and good faith effort at reunification. The third assignment of error is overruled.
 {¶ 15} The judgment of the Allen County Common Pleas Court, Juvenile Division is affirmed.
Judgment affirmed.
 Cupp, P.J., and Shaw, J., concur.
[1] At the time of conception, Angelica was 14 years old, and the biological father, Tonny Barnes ("Barnes"), was 30 years old. Barnes was convicted of Corruption of a Minor as a result of his sexual relationship with Angelica and was incarcerated. Barnes is not a party to this appeal.
[2] Angelica was adjudicated delinquent on one charge of attempted gross sexual imposition, a violation of R.C. 2907.05(A) and 2923.02, a fourth degree felony, in Shelby County Juvenile Court case number 2002-FEL-0073. Apparently, Angelica did not appeal the delinquency finding.